# Pittsburgh & Western R. R. Co., Appellant, v. Butler Borough.

*Municipalities—Eminent domain—Railroad companies—Opening of streets through railroad property—Equity—Injunction—Remedy at law.*

1. A municipality may open a street through the land of a railroad company used for railroad purposes where such opening will not destroy the use of the land by the railroad, or the railroad franchises and where a public necessity for the street exists.

2. A municipal ordinance provided for the carrying of a street over the land of a railroad company, occupied by stations and railroad tracks, by means of a viaduct. The railroad company brought a bill in equity to enjoin the municipality from opening the street and from building the viaduct over its land. There was evidence that the railroad company would be inconvenienced during the construction of the viaduct, and that certain of the supports thereof would interfere slightly with the use of a freight station, or of a track approaching thereto. It appeared that the property could still be used for railroad purposes, and that the construction of the viaduct would contribute to the public safety by making possible the elimination of dangerous grade crossings. The lower court found that the railroad company could be compensated in damages for whatever injuries it might sustain by reason of the building of the viaduct, and dismissed plaintiffs' bill. *Held*, no error.

Argued Oct. 14, 1913. Appeal, No. 67, Oct. T., 1913, by plaintiffs, from decree of C. P. Butler Co., June T., 1913, No. 7, dismissing bill in equity for an injunction in case of The Pittsburgh and Western Railroad Company and The Baltimore and Ohio Railroad Company, operating The Pittsburgh and Western Railroad, v. The Borough of Butler, a Municipal Corporation. Before BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Bill in equity for an injunction.

On final hearing, GALBREATH, P. J., filed the following opinion:

The Pittsburgh and Western Railroad Company is a corporation duly organized and existing under the laws of the Commonwealth of Pennsylvania, and clothed with all the rights, powers and privileges of the General Railroad Act, approved February 19, 1849, and its supplements, and in pursuance thereof it has located, constructed and is now maintaining and operating by and through the Baltimore and Ohio Railroad Company a line of railroad extending from the City of Pittsburgh, Pennsylvania, by way of the Borough of Butler, to Mt. Jewett, McKean County, Pennsylvania, a distance of one hundred and sixty-three miles.

Said Pittsburgh and Western Railroad Company is the owner in fee of the lot of land bounded on the south and abutting on Center avenue in the Borough of Butler, Pennsylvania, containing two acres, more or less upon which is located and constructed its passenger station, ticket office, baggage room, yard office, freight house, main line tracks, passenger siding, freight house siding and delivery tracks, car storage tracks, yard and switches, requisite and essential for the proper and expeditious operation of its said railroad, the handling of trains thereon and the transaction of the business of the railroad at said point.

By ordinance duly enacted, bearing date June 4, 1912, the town council of the Borough of Butler ordained that a public street be opened forty-five feet wide extending from the eastern end of Wayne street to a point on Fairview avenue, north of Center avenue. The street thus ordained crosses over Cliff street at an elevation of twenty-five feet; thence eastward over the right-of-way of the Pittsburgh, Bessemer and Lake Erie Railroad Company at an elevation of twenty-seven feet; thence passing eastward over the Connoquenessing Creek and lands of Mackey, it crosses the right-of-way and lands of the Pittsburgh and Western Railroad Company, now operated by the Baltimore and Ohio Railroad Company at an elevation of twenty-two feet; continuing thence

eastward over land of Larkin to Fairview avenue and thence to Center avenue. The street so ordained is to be supported upon pedestals set in pairs twenty-four inches square at the surface level, standing thirty feet apart from center to center, according to plans and specifications made by the borough engineer. Three pairs of these pedestals are located wholly on the land of the plaintiff company. The first of these pairs to the westward is located at the west side of said company's freight house, projecting twenty-four inches from the western line thereon. Another pair is located in like manner at the eastern side of said freight house. The third pair is located at the passenger station, one leg being at and against the west side of said building about sixteen feet from the southwest corner and the other rising at the edge of the platform at the south end of said station. Both freight and passenger stations are one-story buildings of board frame construction. Connoquenessing Creek passes through the Borough of Butler in a north-easterly and south-westerly direction. The Pittsburgh, Bessemer and Lake Erie Railroad at the point in question, passes along the northwestern bank of said creek, whilst the Pittsburgh and Western Railroad passes along the southwestern bank of the stream. These railways, together with said creek, divide said borough into two unequal portions, the main part of the borough lying to the northwest of said stream and railroads, whilst another portion, containing a population of about four thousand, is situate on the south-east side thereof. The population of the whole borough, as shown by the United States census of 1910, is approximately twenty-one thousand.

The principal thoroughfare for travel between these portions of the borough is Center avenue, which is crossed at grade by said railroads and the location of which is approximately parallel to the proposed new street and distant about one hundred and fifty feet therefrom. The travel on Center avenue is large and at times

congested affording, as it does, not only the principal means of passing from one portion of said borough to the other, but also accommodating a large amount of travel from the country districts lying to the south and east of the Borough of Butler.

On both sides of Center avenue and for a considerable distance along the same on both sides of said railroads, business houses have been constructed and have been occupied for many years for business purposes. The construction of an elevated viaduct along said avenue, over and across said railroads and creek, would greatly obstruct the use of said avenue at grade and would work damage to said property owners in an amount estimated at about one hundred thousand dollars.

By reason of the large amount of travel on Center avenue, the crossing thereof at grade by said railroads has created a source of great and constant danger to all persons having occasion to travel said street and to avoid this danger it is necessary to provide an adequate, convenient and safe means of communication and travel over and across the same by means of an elevated street or viaduct.

The route of the proposed highway and its form of construction as set out in the ordinance of June 4, 1912, take as little of the property of the plaintiff and interfere as little with the use of the property for railroad purposes by the plaintiff company as is possible under all the circumstances and conditions.

The elevation of Center avenue over the lines of said railroad and the construction of approaches from said elevated street to the depot of the plaintiff company would create a greater obstruction and occupy more of the property of the plaintiff company and would more seriously interfere with its franchise and the operation of its railroad than the highway now proposed to be constructed.

The proposed highway and its form of construction and the plans and specifications therefor made by H.

O. Carson, borough engineer, will provide such adequate, safe and convenient means of communication between the two said portions of the Borough of Butler and no other location would better accommodate the same.

The said superstructure or roadway proper will not materially interfere with the use now or heretofore made of the property by the plaintiff company. The supports on the north and south sides of the freight depot will interfere but slightly with the use of this depot or the track appurtenant to it and the only other set of pedestals on the plaintiff's property, near the western end of the passenger station, while it may cause some interference will not materially or unreasonably incommode or embarrass the plaintiff in the use of its property.

The plaintiff company will be to some extent inconvenienced during the progress of the work of constructing said viaduct. It will also be necessary to shift the switch leading into the freight station on the eastern side from two to four feet further eastward in order to afford room for the construction of the pedestal located at that point. The cost of shifting said track will amount to three or four hundred dollars. The plaintiff company proposes in the future to erect a new passenger station upon its ground near the location of the present passenger station, but no plans were placed in evidence from which it may be known whether or not they would be interfered with by the proposed new street. The inconvenience to said plaintiff company, growing out of the occupancy of some portion of its ground, as hereinbefore set forth, as well as the inconvenience which may be sustained, during the period of the construction of the proposed viaduct, are such as can readily be compensated in damages.

All requests for findings of fact not herein found are denied.

The plaintiffs ask us to find as a matter of law "that the said defendant has no right or authority to take,

appropriate and condemn the lands and franchises of said plaintiff, already dedicated to public use, or to construct thereover or thereupon, said proposed elevated street or viaduct, and that said ordinance, enacted June 4, 1912, being Exhibit 'A' of defendant's answer, is as a whole ultra vires."

The General Borough Act of April 3, 1851, Section 2, P. L. 320, gives to municipal authorities of boroughs the power "to survey, lay out, enact and ordain such streets, lanes, alleys, courts and common sewers as they may deem necessary." This general legislation conferred on boroughs a power co-extensive with the public need to ordain streets within the borough limits. The general power thus conferred, was modified and regulated as to the manner of its exercise by the Act of June 7, 1901, P. L. 531, relating to railroad crossings of highways which act in Section 1 provides "That except as in this act elsewhere provided, all crossings hereafter established, whether of highways by railroads or of railroads by highways, shall, except in cities of the first and second classes, be above or below the grade thereof." Other sections of the act provide that such constructions may be at grade by permission of the court.

This supplemental legislation leaves the original power of the municipal authorities to ordain streets in boroughs unimpaired, except that the crossing of railroads by streets or of streets by railroads must be above or below grade, unless by permission of the court. This legislation both original and supplemental carries with it, by necessary implication, the right of the borough in ordaining streets, either at grade or overhead or beneath the grade, to occupy such portions, as may reasonably be necessary, of the railroad property for that purpose. Besides it has been repeatedly held that where the necessity exists, the franchises of a railroad company, like other property, are subject to be taken for public use. In the case of Pittsburgh Junction Railroad Company v. Allegheny Valley Railroad Company, 146

Pa. 297, the Supreme Court says that "Railroad copora-
tions are the creatures of the public, and were created to
serve the public in the matter of transportation of
freight and passengers. It is not too much to require
them to submit to a slight inconvenience where the pub-
lic interests are concerned, especially where such incon-
veniences can be compensated in damages. Their fran-
chises like other property, may be taken by the public
for the public welfare, where there exists a necessity for
such taking. We have interfered repeatedly where such
an attempt has been made without any actual necessity
therefor. In the case in hand, we think such necessity
does exist, and the slight inconvenience to the appellant
company must yield to the public good." This was said
in a case where one railroad company sought to cross
another at the point where its yards were located; where
much business was carried on and many tracks were re-
quired to be crossed. The controversy was between two
railroad companies, corporations formed for the same
purpose, of the same kind and of equal grade. So far as
concerns their legal rights, both were private corpora-
tions chartered by the State to serve a public purpose,
but organized by those interested therein for private
gain, and if the language above quoted was applicable in
that case, how much more and with greater force may it
be predicated of a controversy where the public welfare,
represented by the municipal authorities, is set over
against the convenience of a private corporation. Both
are creatures of the State with this difference, however,
that the municipality is itself a governmental agency
whose only function is to serve the public good, which
must be the first consideration. In the case of Phila-
delphia, Wilmington & Balto. R. R. v. Philadelphia, 9
Philadelphia 563, wherein a motion was pending to con-
tinue a special injunction granted by the Common Pleas
Court of Philadelphia restraining the defendants from
opening 15th street through that portion of the plain-
tiff's property known as the Baltimore depot, Judge

PAXSON then presiding in said court, speaking of the rights of the parties in that case says: "Nor do we see any force in the objection that the opening of Fifteenth street, as proposed, would destroy the franchise of the company. That such opening would be an obstruction to the proper and ordinary working of the railroad, is doubtless true. But it would only be an inconvenience; a serious one, perhaps, but not a destruction of the franchises of the company. And such franchises are held subject to certain rights of the public. One of those rights is that of opening public highways across the track of the railroad, in order that communication between different portions of the city may not be obstructed." Again he says: "Of the wisdom of opening the street through the Baltimore Railroad depot we express no opinion. Upon such question the action of councils is conclusive. That it will involve the city in a considerable amount of damages seems highly probable. That it will seriously embarrass the operation of a leading line of railroad and create a highway that can only be used at the peril of life and limb is equally probable. While the claim of the railroad to prevent, as a matter of right, the city from opening this street cannot be maintained as a proposition of law, it will remain for the city authorities to determine whether, as a matter of policy, it is wise to cut one of the great arteries which supply the city with its commercial blood. Upon the entering of satisfactory security by the city, we will refuse this motion and dissolve the injunction."

In the case of Ligonier Valley Railroad Company v. Latrobe Borough, 216 Pa. 221, wherein a bill was presented to the Common Pleas Court of Westmoreland County to restrain the Borough of Ligonier from constructing grade crossings at certain points in said borough, Mr. Justice STEWART, delivering the opinion of the Supreme Court says: "In ordering and laying out these streets across appellant's railroad the borough authorities were running counter to no established policy.

The Act of June 7, 1901, P. L. 531, had not then been passed. The General Borough Act of April 3, 1851, P. L. 320, was the authority under which the streets were laid out. In so many words that act empowers boroughs to survey, lay out, enact and ordain such roads, lanes and alleys as they may deem necessary. That the ordinance is unreasonable, in view of the danger attending the use of the crossing, and the adequacy of the crossings then existing for the public need, is a view that might have been urged when the adoption of the ordinance was being considered by the borough authorities; their decision however, with respect to it, in any event would have determined the question finally. It is settled law that where the legislature in terms confers upon a municipal corporation the power to pass ordinances of a specific and defined character, an ordinance passed pursuant thereto cannot be impeached as invalid because it would have been regarded as unreasonable if passed under the incidental power of corporation, or under a grant of power general in its nature. In other words, what the legislature distinctly says may be done, cannot be set aside by the courts because they deem it to be unreasonable or against sound policy." In the case of Cincinnati, Indianapolis and Western Railway Company v. City of Connersville, 218 U. S. 337, wherein the question of the right of the railway company to receive damages by reason of the taking of a portion of its ground in order to the construction of an underhead crossing, Mr. Justice HARLAN, delivering the opinion of the Supreme Court of the United States and speaking of the implied conditions upon which the franchises of a railroad company are given and held, uses this language: "The railway company accepted its franchise from the state subject necessarily to the condition that it would conform at its own expense to any regulations, not arbitrary in their character, as to the opening or use of streets, which had for their object the safety of the public, or the promotion of the public convenience, and

which might, from time to time, be established by the municipality, when proceeding under legislative authority, within whose limits the company's business was conducted. This court has said that the power, whether called police, governmental or legislative, exists in each state, by appropriate enactments not forbidden by its own constitution or by the Constitution of the United States to regulate the relative rights and duties of all persons and corporations within its jurisdiction, and therefore to provide for the public convenience and the public good."

Viewed in the most favorable light from the standpoint of the plaintiff company's rights, the authorities which we have quoted, establish we think, the following propositions:

First: That a railroad corporation holds its franchises and property subject to such taking and use for the public good and convenience as will not be destructive thereof or which will not greatly impair their use and that the public good rises higher than the private right.

Second: That the proper authorities, in municipalities, in the present case, of the Borough of Butler, have the statutory right and authority to ordain such streets as the public welfare and convenience may require over and across the property of a railroad company, so long at least, as this does not destroy or seriously impair the property and franchises of the company in view of its intended use.

Third: Where the municipal authorities have so exercised their power and discretion in a reasonable manner and not arbitrarily, to meet an urgent public need, the courts are without power to restrain their action.

The testimony in the pending case shows without controversy the urgent need of an overhead crossing to accommodate the travel over and across the plaintiff's railroad. It also shows that the present means of travel by way of Center avenue is of a very dangerous character

by reason of its magnitude and by reason of the fact that the crossing at that point is at grade. That the municipal authorities have elected to open up a new street as provided in the ordinance of June 4, 1912, instead of erecting an elevated structure along Center avenue, we take to be such an exercise of their discretion as the court is without power to restrain. There is nothing in the testimony that indicates that this exercise of discretion is arbitrary or wilful or unreasonable. It may be presumed that in exercising their discretion to open up a new street rather than to impose an elevated structure on Center avenue, already opened, they were prompted in part by the fact that the latter alternative would entail a large expenditure of money to compensate in damages the abutting owners along the way of any elevated structure on Centre avenue. In addition to this, however, if Center avenue at grade were abandoned for an elevated structure at that point, it would leave the plaintiff company without any adequate means of reaching its depot and station at grade. We are not aware of any authority in the court or elsewhere to prevent the borough authorities from abandoning Center avenue at grade in case of the erection of an elevated structure at that point. Besides it appears from the evidence that an overhead structure upon Center avenue, with its necessary approaches, to the plaintiff's property would be more obstructive thereof than the elevated street now proposed to be constructed.

No doubt the plaintiff company will suffer some inconvenience during the construction of said viaduct by reason of the work necessary to be done on its property, and also to some extent thereafter by reason of the occupancy of its ground to the extent required for the maintenance of the necessary pedestals; and it is quite possible that its plans for the future use of its property will require modification and re-adjustment; but all these are such as can be compensated in damages and they are not different in kind from the inconvenience

experienced, and the readjustment of future plans made necessary in almost every case where lands are taken for a public highway or railroad purposes. The division of a farm may result in great inconvenience in its use and may disappoint well formed plans for its future use and enjoyment and require modifications and re-adjustments, but these are the contributions which all are required to make to progress and to the public welfare. In the present case the public inconvenience which renders the elevated street necessary was created, in part, by the plaintiff's act in crossing the existing highway at grade. It may not now complain, we think, that it is called upon to supplement the burden of expenditure thus imposed on the defendant borough, by contributing a comparatively small degree of inconvenience on its part, in order that the greater inconvenience and danger to the public growing out of the grade crossing may be avoided, especially when such contribution can be compensated in damages.

We conclude therefore as matters of law:

First: That the municipal authorities in the enactment of the ordinance of June 4, 1912, have not exceeded their legal right, but, on the contrary, are exercising a power vested in them by legislative enactment.

Second: That the location of the overhead structure at the place and in the manner provided by said ordinance is a legitimate exercise of discretion on the part of the borough authorities.

Third: The court is without authority of law to restrain the defendant from the construction of the proposed structure.

Fourth: That the pending bill should be dismissed at the plaintiff's cost.

All requests for findings of law not in accord herewith are denied.

Let a decree nisi therefore be entered by the prothonotary in accordance with the views herein expressed and unless exceptions to the findings of fact or conclusions

of law herein set forth be filed sec. reg. let a final decree be drawn in accordance herewith.

Exceptions to the findings of fact and conclusions of law of the trial judge were dismissed by the court, and a decree was entered dissolving a preliminary injunction which had been granted and dismissing plaintiffs' bill.  Plaintiffs appealed.

*Errors assigned* were findings of fact and law of the trial judge and the decree of the court.

*R. P. Scott,* for appellant.

*John H. Wilson,* with him *W. D. Brandon,* for appellee.

PER CURIAM, November 8, 1913:
That the injunction prayed for by the appellants should have been denied conclusively appears from the opinion of the learned court below directing the bill to be dismissed, and on that opinion the decree is affirmed with costs.